Statement.

SALVATORE PACELLI *vs.* PEOPLES RAILWAY COMPANY, a corporation of the State of Delaware.

1. CARRIERS—ASSAULT ON PASSENGER—LIABILITY.

For an unwarranted assault on a passenger by a motorman, committed in connection with and springing from his employment, the carrier is liable.

2. CARRIERS—ASSAULT ON PASSENGER—JUSTIFICATION.

Abusive, indecent, or opprobrious language alone does not justify assault of a motorman on a passenger, so as to relieve the carrier of liability.

3. CARRIERS—RIGHT TO EJECT PASSENGER.

The servants in charge of a car, using only the force reasonably necessary, may eject a passenger using obscene, profane, or vulgar language, or otherwise disorderly.

4. DAMAGES—PUNITIVE DAMAGES.

Punitive damages may be awarded only where the injury is wanton or malicious.

(*December 3, 1914.*)

Judges BOYCE and RICE sitting.

*Caleb E. Burchenal* and *W. W. Knowles* for plaintiff.

*Robert H. Richards* and *Aaron Finger* for defendant.

Superior Court, New Castle County, November Term, 1914.

ACTION ON THE CASE (No. 38, May Term, 1914) by Salvatore Pacelli against the Peoples Railway Company, a corporation of Delaware, for personal injuries to plaintiff.

The plaintiff, in substance, testified that on the evening of October 12, 1913, at about half past five o'clock, he was a passenger on a trolley car of the defendant company running west on Sixth Street in the City of Wilmington, and that when the car reached a point about a square east of Scott Street he told the conductor he wished to get off at Scott Street and then worked his way through the crowded car toward the front door; that the motorman did not stop at Scott Street and——

"I told him, 'Why don't you stop at Scott Street?' and he told me 'Shut up, you d——d guinea; if you don't I will throw you off the car.' He never stopped at Lincoln Street, which is the next street to Scott, and I asked him, 'Why don't you stop at Lincoln Street?' and he grabbed me back of my shoulders and said 'Go to h——, you d——d son of a b—— guinea,' and throwed me off the car. I did not say anything more to him. He grabbed

me by my shoulder, and he pushed me down off the car, through the front door which was open. The car was moving all the time and it dragged me about twenty feet; I held on and it got stronger than my arm and I fell down."

The motorman was called as a witness for the defendant and testified in substance that:

"On the afternoon the plaintiff has referred to, we left Fourth and Church Streets at a quarter past five. It is a heavy trip. I suppose we took on about one hundred or one hundred and twenty passengers. We make almost every stop going out Sixth Street all the way to Brandywine Springs. I did not see the plaintiff until we got to Scott Street, and, going down the hill, I was naturally looking for a bell. We got to Scott Street and the plaintiff stood at my left shoulder. The conductor did not give me any bell and naturally I went on, and when I got over to the other street, the plaintiff said, 'I want to get off here.' I said, 'Where do you want to get off?' He said, 'At Scott Street.' I said, 'You cannot get off at Scott Street now; you are past it. I will let you off at Lincoln Street; we don't stop in the middle of squares,' and the plaintiff muttered something in broken English. I understood him to say something like son a b——. · Whether he did say that or not I don't know, but he was making some funny motions just like a man that is excited. I didn't know but that he might hit me in the back. I was working and not supposed to see what is going on behind me. Before I would take any chances of having any trouble I opened the door and off he went. I wound up the brakes tight enough to bring the car to a stop after the man went out. It did not go ten feet. After he went out he still had hold of the grab handle, and as he jumped out, I jumped over him and held him away so that he would not go under the wheels. He dragged about ten feet." "Q. You threw him off just before you got to Lincoln Street? A. Just this side of Lincoln, yes, sir."

The motorman denied that he cursed the plaintiff.

### PLAINTIFF'S PRAYERS.

The motorman of the defendant company had no right to throw a passenger off of a moving car, and even if the passenger was a wrongdoer he was bound to bring his car to a standstill before removing the passenger.

Negligence, or a wrongful act, on the part of the motorman in charge of the car in question, would be the negligence and wrongful act of the defendant, for which the said defendant company would be liable in damages to the extent of the injuries suffered by the plaintiff. *Hearn and Morrow v. Wil. City Ry. Co.*, 1 *Boyce* 271, 277, 76 *Atl.* 629; *Little Rock Elec. Co. v. Goerner*, 80 *Ark.* 158, 95 *S. W.* 1007, 1010, 7 *L. R. A.* (*N. S.*) 97, 10 *Ann. Cas.* 273.

It is the duty of the defendant company to stop its cars and wait a reasonable time for a passenger to get off and not to force him off while said car is in motion. *Benson v. Wil. City Ry. Co.*, 1 *Boyce*, 202, 206, 75 *Atl.* 793.

If the plaintiff was wantonly and willfully thrown from the car of the defendant by the motorman, while the car was in motion, exemplary damages by way of punishment and beyond a mere compensation of the actual injuries may be awarded. *Jefferson v. Adams*, 4 *Harr.* 321; *Watson v. Hastings*, 1 *Penn.* 47, 52.

If the plaintiff used words of provocation and abuse toward the motorman, nevertheless these alone would not justify an assault by the motorman, and if an assault was thereby committed, the defendant company would be liable for the damages resulting from the assault. *Haman v. Omaha Horse Ry. Co.*, 35 *Neb.* 74, 52 *N. W.* 830; *Birmingham Ry. & Elec. Co. v. Baird*, 130 *Ala.* 334, 30 *South.* 456, 54 *L. R. A.* 752, 89 *Am. St. Rep.* 43; *Birmingham Ry. Light & Power Co. v. Mullen*, 138 *Ala.* 614, 35 *South.* 701; *Hanson. v. Urbana & Champayne Elec. St. Ry. Co.*, 76 *Ill. App.* 474; *Williams v. Gill*, 122 *N. C.* 967, 29 *S. E.* 879; *Palmer v. Winston Salem Ry. & Elec. Co.*, 131 *N. C.* 250, 42 *S. E.* 604; *Galveston, H. & S. A. Ry. Co. v. La Prelle*, 27 *Tex. Civ. App.* 496, 65 *S. W.* 488; *Moritz v. Interurban St. Ry. Co. (Sup.)* 84 *N. Y. Supp.* 162; *Chicago & E. R. Co. v. Flexman*, 103 *Ill.* 546, 41 *Am. Rep.* 33; *Coggins v. Chicago & A. R. Co.*, 18 *Ill. App.* 620; *Wise v. South Covington & C. Ry. Co. (Ky.)* 34 *S. W.* 894; *B. & O. R. Co. v. Barger*, 80 *Md.* 23, 30 *Atl.* 560, 26 *L. R. A.* 220, 45 *Am. St. Rep.* 319.

It would be improper for the court to direct a verdict for the defendant, because the testimony that abusive language was used by the plaintiff has been contradicted by witnesses for the plaintiff; and wherever there is a conflict in the testimony, it is a matter for the jury and not for the court.

### DEFENDANT'S PRAYERS.

1. A passenger who uses obscene, profane or vulgar language, or is otherwise disorderly, has no right to remain on the

Prayers.

trolley car, whether he has paid his fare or not, and those in charge of the car are justified in ejecting him. *Peavy v. Georgia R. R. & B. Co.*, 81 *Ga.* 485, 8 *S. E.* 70, 12 *Am. St. Rep.* 334.

2. Carriers of passengers stand under a species of police duty toward protecting their passengers, and in the exercise of this police duty it is not only the right but the duty of the carrier to expel passengers who have become so disorderly as to cause or threaten danger, discomfort or annoyance to other passengers. *Louisville, etc., R. Co. v. Logan*, 88 *Ky.* 232, 10 *S. W.* 655, 3 *L. R. A.* 80, 21 *Am. St. Rep.* 332; *Pease v. Del., etc., R. Co.*, 101 *N. Y.* 367, 5 *N. E.* 37, 54 *Am. Rep.* 699.

3. If the plaintiff in this case is entitled to recover at all, he is entitled to recover no more than compensation for his actual injuries. He is not entitled to punitive, vindictive or exemplary damages. *Freedman v. Met. St. Ry. Co.*, 89 *App. Div.* 486, 85 *N. Y. Supp.* 986; *Robison v. Rupert*, 23 *Pa.* 523; *St. Louis Ry. Co. v. Myzell*, 87 *Ark.* 123, 112 *S. W.* 203; *Mitchell v. United R. Co.*, 125 *Mo. App.* 1, 102 *S. W.* 661.

4. If the jury believe that the plaintiff is entitled to damages, but believe that nominal damages would be all the plaintiff should have, because of mitigating circumstances, you have the right to award him only nominal damages. *Freedman v. Met. St. R. Co.*, *supra*.

5. While it is the rule that a carrier of passengers is responsible for the wrongful acts of its employees while in the discharge of their duty, nevertheless this rule does not apply where a passenger provokes an assault by acts or threats of personal violence. *Weber v. Brooklyn*, 47 *App. Div.* 306, 62 *N. Y. Supp.* 1.

6. Neither is the carrier responsible where the passenger commences an altercation with the carrier's employee, using abusive or insulting language, and thus provokes an assault by the employee. *Scott v. Central Park R. Co.*, 53 *Hun.* 414, 6 *N. Y. Supp.* 382; *James v. Met. St. Ry. Co.*, 80 *App. Div.* 364, 80 *N. Y. Supp.* 710; *Harrison v. Fink* (*C. C.*) 42 *Fed.* 787; *Peavy v. Georgia R. Co.*, 81 *Ga.* 485, 8 *S. E.* 70, 12 *Am. St. Rep.* 334; *Eads v. Met. R. Co.*, 43 *Mo. App.* 536; *L. M. R. Co. v. Wetmore*, 19 *Ohio St.* 110, 2 *Am. Rep.* 337; *Wise v. Covington*, 91 *Ky.* 537, 16 *S. W.* 351;

*Id.,* 34 *S. W.* 894; *Georgia Ry. Co. v. Hopkins,* 108 *Ga.* 324, 33 *S. E.* 965, 75 *Am. St. Rep.* 39; *Central R. Co. v. Motes,* 117 *Ga.* 923, 43 *S. E.* 990, 62 *L. R. A.* 507, 97 *Am. St. Rep.* 223.

7. If the plaintiff commenced the altercation with and in the course of it addressed indecent and insulting language to the motorman, and language such as was calculated or likely to produce the assault which resulted in the alleged injury to the plaintiff, the verdict must be for the defendant. *Scott v. Railway Co.,* 53 *Hun.* 414, 6 *N. Y. Supp.* 382.

8. If it was the fault of the plaintiff that he was assaulted and injured, in that, by his improper conduct, he provoked the motorman of the car in question to commit the act complained of, such improper conduct is equivalent to contributory negligence on the part of the defendant in unfitting the employee for properly observing his duty toward passengers, and in such case your verdict should be for the defendant. 4 *R. C. L.* § 599, *page* 1172, and cases cited.

9. If the court should refuse the instructions numbered 7 and 8, the defendant requests the following instruction:

If the plaintiff engaged in an altercation with the motorman and in the course of it addressed indecent, insulting and provocative language to the motorman, such as was likely to produce the assault which resulted in the plaintiff's injury, such conduct on the part of the plaintiff may be taken into consideration by the jury in mitigation of damages and may even be sufficient to reduce damages to a nominal amount.

10. That the court instruct the jury to render a verdict for the defendant.

BOYCE, J., charging the jury:

Gentlemen of the jury:—This is an action brought by Salvatore Pacelli against the People's Railway Company, to recover damages for personal injuries alleged to have been caused by the defendant company.

The plaintiff's declaration contains two counts, and the negligence averred therein and relied upon is by the first count that the defendant company negligently and carelessly suffered and permitted the motorman on one of its cars, on the twelfth day of October, A. D. 1913, to use unnecessary force and violence in pushing or throwing the plaintiff from the car to the street or

ground, at or near the intersection of West Sixth Street with Scott Street in this city.

By the second count it is charged that the defendant company through and by its motorman willfully and maliciously, negligently and carelessly knocked, hurled, pushed and threw off to the ground the plaintiff from the front end of its car while in motion.

The defendant company denies that it was guilty of any of the acts complained of against it, and insists that the plaintiff suffered whatever injuries he may have sustained by reason of his own acts of negligence and misconduct.

The liability or nonliability of a carrier of passengers under facts similar to those now before you, presents a question of law of first impression in this state. The decisions in this country are inharmonious, and it is a matter of regret to the court that we do not have time for a full and careful consideration of the question.

We are constrained upon our view of the law applicable to the facts of this case, sustained, we think by the weight of authority in this country, to deny the application of the defendant for binding instructions.

This case is important to carriers of passengers, to their employees and to the traveling public, and demands your serious consideration. We say to you, gentlemen, that with the facts of this case, the court have nothing to do. They are for your determination alone. You are the sole judges of the weight and effect of the testimony. You have the evidence before you, and it is now for your careful consideration and determination, applying thereto the law as we shall declare it to you.

This action is based upon negligence which has often been defined by this court to be the want of ordinary care, that is, the want of such care as a reasonably prudent and careful man would use under similar circumstances.

It is for you to determine from the evidence whether there was any negligence that caused the accident complained of, and if there was, whether it was the negligence of the defendant or of the plaintiff.

To enable the plaintiff to recover at all, he must show to your satisfaction by a preponderance of the evidence that the negligence which caused the accident, if any there was, was the fault of the defendant company. The burden of proving such negligence is upon the plaintiff, and the defendant can be held liable only for such negligence as constitutes the proximate or immediate cause of the injury.

It is the duty of a street railway company in the conduct and management of its business to use all reasonable means, care, vigilance and circumspection to prevent injury to its passengers. This duty is imposed by law as a public duty as well as by contract to carry safely as far as care and diligence will reasonably admit.

[1] The duty of a street railway company towards its passengers is not only to carry them safely; but to protect them from any improper and unnecessary violence at the hands of its servants.

Street railway companies are responsible to their passengers for the unlawful acts of their servants employed in running their cars, when such wrongful acts are committed in connection with their employment and spring from or grow immediately out of such employment. 6 *Cyc.* 600.

[2] It is a familiar rule of law that abusive, indecent or opprobrious language or epithets alone never justify the commission of an assault. Such language or epithets employed by a passenger on a street railway car towards the motorman of the car will not alone warrant an assault by the motorman upon the passenger, nor will the responsibility for any injuries which the passenger may receive in consequence of an assault be limited to the motorman alone, but the company, whose servant the motorman is, is liable also.

[3] A passenger on a trolley car who uses obscene, profane or vulgar language, or is otherwise disorderly, has no right to remain on the car whether he has paid his fare or not, and the servants in charge of the car may in a reasonable and lawful manner, eject him, using such force as is reasonably necessary to accomplish such purpose.

If the plaintiff did not receive the injuries complained of by any act of negligence of his own entering into and contributing thereto, but was injured in the manner complained of by the negligence and wrongful conduct of the motorman of the defendant company, suffered or done in the course of his employment, the defendant company is responsible for whatever injuries were sustained.

If you find that the motorman while in the discharge of his duties as such, without legal excuse or provocation, did push, throw, knock or hurl the plaintiff from his car, by reason of which the plaintiff sustained injuries to his person, your verdict should be for the plaintiff.

If you should find for the plaintiff your verdict should be for such a sum as will reasonably compensate him for the injuries sustained, including his pain and suffering in the past as well as for the future, his loss of time and wages and money expended for medical treatment; and also for any permanent injuries which may impair his earning ability hereafter.

[4]   We have been requested by the plaintiff to instruct you that this is a case in which you may award vindictive or punitive damages.   We say to you that such damages are properly awarded only where the injury to the plaintiff is wanton or malicious. Under such circumstances exemplary damages are regarded by the law as a punishment imposed upon the defendant, or perhaps more properly as a special compensation to the plaintiff for his wounded feelings.   There is no hard and fast rule determining when such damages should be awarded, but each case is decided on its special merit.

If you find for the plaintiff you may in assessing his damages consider whether his conduct was such as to reasonably and naturally arouse the passions of the motorman and have the effect to provoke the acts complained of; and whether they were malicious in view of the provocation, if any, under which the motorman acted.

All the prayers of counsel not embraced in this charge are disregarded.

                              Verdict for plaintiff.