ELEANOR M. WHITTINGTON vs. PHILADELPHIA, BALTIMORE AND
WASHINGTON RAILROAD COMPANY, a corporation of the State
of Delaware.

1.  CARRIERS—CARRIAGE OF PASSENGERS—REGULATIONS—ENFORCEMENT.

A carrier may make reasonable rules for the safety and comfort of its
passengers, and demand compliance therewith.

2.  CARRIERS—CARRIAGE OF PASSENGERS—CARE REQUIRED.

A carrier must carry its passengers safely, and protect them from any
unlawful violence at the hands of its servants.

3.  CARRIERS—"PASSENGERS"—WHO ARE.

Where a person was ready and willing, and voluntarily offered to pay
fare, but the conductor, without legal justification or excuse, refused to receive
the same, the person was a "passenger", entitled to protection as such, pro-
vided he did nothing to justify his ejection.

4.  CARRIERS—PASSENGERS—WHO ARE.

Where a person boarding a train refused to pay fare or to comply with a
reasonable rule of the carrier, or both, the conductor could eject him from
the train and prevent him from again boarding it, provided in so doing he
used no more force than was necessary, but the carrier was liable for any
excessive force.

5.  CARRIERS—PASSENGERS—WHO ARE.

Where a person entered on the platform of a car and offered money to
the conductor to pay his fare, and did not refuse to enter the car, he was a
passenger, and the conductor could not eject him from the platform or use
force and violence to remove him.

6.  CARRIERS—EJECTION OF PASSENGERS—ACTIONS—BURDEN OF PROOF—
    "PREPONDERANCE OF EVIDENCE".

A passenger, suing for wrongful ejection from a train, must prove, by a
preponderance of the evidence, which is the greater weight or value of the
evidence; that the injuries complained of were received as alleged in the
declaration.

7.  EVIDENCE—CREDIBILITY OF WITNESSES—DUTY TO RECONCILE TESTI-
    MONY.

Where the evidence is conflicting, the jury must reconcile it if they can,
and, if not, they must give credit to the testimony they believe worthy of
credit.

8.  CARRIERS—WRONGFUL EJECTION OF PASSENGERS—DAMAGES.

A passenger, entitled to recover for a wrongful ejection, is entitled to
such sum as will reasonably compensate him for the injuries sustained, includ-
ing pain and suffering and money expended for medical attendance.

9. CARRIERS—EJECTION OF PASSENGERS—PUNITIVE DAMAGES.

To justify punitive damages for the ejection of a passenger, the assault on the passenger must not only have been unlawful and wrongful, but willful and aggravated.

(*March* 4, 1915.)

PENNEWILL, C. J., and RICE, J., sitting.

*James M. Satterfield* and *W. Watson Harrington* for plaintiff.

*George M. Jones* and *Henry R. Isaacs* for defendant.

Superior Court, Kent County, February Term, 1915.

ACTION ON THE CASE (No. 21, April Term, 1914) by Eleanor M. Whittington against the Philadelphia, Baltimore and Washington Railroad Company, to recover damages for personal injuries and for injuries to her feelings, alleged to have been occasioned by the conductor of the defendant company in rudely, willfully, maliciously and in a rough and insulting manner ejecting Eleanor M. Whittington from the platform and steps of defendant's passenger coach at the Town of Clayton, in the early evening of January 10, 1914, while said plaintiff was attempting to enter the same as a passenger. Plaintiff claimed exemplary damages in addition to compensatory damages.

The facts appear in the charge of the court.

See, also, *ante*, 248, 92 *Atl.* 812.

RICE, J., charging the jury:

Gentlemen of the jury:—This action was brought by the plaintiff Eleanor M. Whittington, against the Philadelphia, Baltimore and Washington Railroad Company, the defendant, to recover for personal injuries alleged to have been occasioned by the defendant company.

The plaintiff claims that in the early evening of January 10, 1914, she attempted at Clayton Station to enter the passenger end of a combination passenger and baggage car of defendant's train, consisting of an engine and one coach, which train was scheduled to run to Smyrna; that being prevented from entering the car because the door was closed and locked, she stepped off

the car and went along the station platform to the baggage end of the car, and while in the act of going up the steps there, she was pushed down the steps and off the train by the conductor; that she again attempted to board the train and was pulled therefrom by the conductor who then struck and cursed her; that she finally succeeded in getting on the steps of the train but was prevented from getting inside the car, by the conductor, and she rode to Smyrna, her destination, on the car steps. She claims that as a result of the conduct and actions of the conductor she was injured about the head, arm and knee. The plaintiff admits that she did not have a ticket when she boarded or attempted to board the train, but she claims that the ticket office was closed when she reached the station; she also claims that she was ready and willing and did offer to pay proper and reasonable fare to the conductor, for her transportation to Smyrna.

The defendant company denies that the plaintiff was unlawfully or improperly ejected from the car, and contends that the plaintiff was not lawfully riding on the train, for the reason that when she boarded the same she stood upon the platform of the car, and when informed that the rules of the company did not permit persons to remain on the platform, and when requested by the conductor to go inside the car and pay her fare, she refused to do either, whereupon the train was stopped and the plaintiff was asked to leave; she did so without force being used by the conductor; that upon the train starting she again mounted the steps of the car; that the train was again stopped and when requested to do so she once more stepped freely off; that upon the signal being given for the train to start for the third time the conductor in an effort to prevent the plaintiff from again getting on the train took hold of her, not using more force than was necessary, whereupon she struck him; that the conductor boarded the train and proceeded with his duties and it was without his knowledge that the plaintiff had again gotten on the car and was riding on the platform.

It is admitted by the defendant company that it is and was on January 10, 1914, a corporation engaged in the business of

common carrier of passengers, and that it operated the train in question.

[1] In the conduct and management of its business it is the duty of a common carrier to use all reasonable means, care, vigilance and circumspection to prevent injury to its passengers. The carrier may make reasonable rules and regulations for the safety and comfort of its passengers.

[2] It is the duty of the common carrier to carry its passengers safely and to protect them from any unlawful, improper and unnecessary violence at the hands of its servants.

Much of the present controversy arises over the question whether or not the plaintiff was, at the time and on the occasion complained of, a lawful passenger on defendant's train. This is a question for your consideration and determination.

[3] If you believe from the evidence that the plaintiff was ready and willing and voluntarily, or when requested to do so, did offer to pay the usual fare for her transportation and that the conductor without legal justification or excuse refused to receive the same, then we say to you that she was a passenger on the train entitled to safe transportation to her point of destination, provided that while a passenger she did nothing to justify her removal. On the other hand if you should believe that the plaintiff refused to pay her fare when requested by the conductor so to do then she was not accepted as a passenger by the company, and under such circumstances she would not be a passenger within the contemplation of law.

[4] If you believe that the plaintiff refused to pay the customary and usual fare, or that she refused to comply with the rule of the company introduced into evidence, that passengers should not stand on the platforms of the cars while the train was in motion, or both, the conductor in charge of the train had the right to eject her from the train, and prevent her from again boarding it provided in doing so he used no more force than was necessary.

Persons lawfully riding on trains as passengers have the right to expect that they will· be safely transported, and a carrier is responsible to its passengers for the unlawful acts of its servants

employed in running its trains, when such wrongful acts are committed in connection with their employment and spring or grow immediately out thereof. *Pacelli v. People's Ry. Co., ante,* 343, 93 *Atl.* 560.

On the other hand the carrier has the right to insist that the passenger do those things she is by law required to do and it has the right to insist, demand and enforce a passenger's compliance with reasonable and proper rules made by it for the safety and comfort of its passengers.

[5]   If you believe that the plaintiff got upon the platform of the car or on the steps of the platform, offered money to the conductor to pay her fare from Clayton to Smyrna, and did not refuse to leave the platform and enter the car, she was a passenger of the defendant company, entitled to transportation, and the conductor of the train had no right to eject her from the platform or cause her to leave the train against her will. Much less would he have a right to use force and violence to remove her. If under such circumstances the conductor did forcibly and violently eject the plaintiff from his train, the company would be liable for any injury sustained by the plaintiff on account of such force and violence.

But, on the other hand, if the plaintiff refused to pay her fare she was not a passenger within the meaning of the law, and if she refused when requested by the conductor to leave the train, the conductor had a right to use so much force, and only so much as was necessary to remove her from the train.

And we may further say that if the plaintiff was not a passenger of the defendant company at the time she claims to have been injured, the company would not be liable for any injuries she may have received, unless excessive force was used in removing her.

[6]   For the plaintiff to recover in this action she must prove by a preponderance of the evidence that the injuries complained of were received in the manner alleged in her declaration, for if her injuries were received in any manner other than alleged she cannot recover. By preponderance is meant the greater weight or value of the evidence.

[7] When the evidence is conflicting as it is in this case, it is the duty of the jury to reconcile it if they can, if they cannot reconcile it they should give credit to the testimony they believe to be worthy of credit and reject any they believe to be unworthy.

[8] If after considering all the evidence in the case you should believe that the plaintiff's injuries were caused by the wrongful and unlawful act of the defendant's servant, your verdict should be for the plaintiff, and for such a sum as will reasonably compensate her for the injuries sustained, including her pain and suffering and for such money as she has proved that she expended for medicines and medical attendance.

[9] We have been asked by counsel for the plaintiff to charge you that if you believe that the acts of the conductor were willful and malicious, you may award exemplary damages in addition to damages in the way of compensation for the injuries received.

The following language was used by the court in the case of *Jefferson v. Adams et al.*, 4 *Harr.* 321:

"In actions * * * for willful injuries the jury might, if they thought the case required it, give damages by way of punishment, and beyond a mere compensation of the actual injury. It was for the jury to say whether there were circumstances of aggravation in this case which ought in their judgment to require a departure from the general rule of compensatory damages, and which called on them to add anything by way of public example or punishment."

And we say to you in this case, it is for you, and you alone, to say whether there is anything proved in this case which requires that such damages should be awarded. To justify such damages you must be satisfied that the assault was not only an unlawful and wrongful one, but willful and aggravated in its character. *Watson v. Hastings*, 1 *Penn.* 52, 39 *Atl.* 587.

If you should believe that the plaintiff is not entitled to recover, your verdict should be for the defendant.

Verdict for defendant.